In the Matter of Earl N. DAVIS.

No. 280S54.

Supreme Court of Indiana.

Jan. 13, 1982.

Michael Riley, Indianapolis, for respondent.

Sheldon A. Breskow, Indianapolis, for the Indiana Supreme Court Disciplinary Commission.

PER CURIAM.

This disciplinary cause is before us on a Verified Complaint filed by the Indiana Supreme Court Disciplinary Commission charging Respondent with three counts of misconduct. The Hearing Officer who was appointed and conducted a hearing pursuant to A.D. Rule 23 has submitted his "Findings of Fact and Conclusions of Law." The Respondent has petitioned for review, but has not filed a brief.

Upon examining all matters presented herein, we find that the Respondent, Earl N. Davis, is a duly licensed and practicing attorney in the State of Indiana, having been admitted to practice in 1956.

As to the charges of Count I of the complaint, we find that Richard Annes was incarcerated in the Indiana Reformatory at Pendleton, Indiana. On April 28, 1978, his

mother, Vesta Annes, met with Respondent and hired him to pursue parole or an early release of her son. Respondent was paid $1,500, the total fee agreed upon. Respondent promised Vesta Annes that he would go to Pendleton to see Richard Annes in the Reformatory.

Vesta Annes returned to the Respondent's office on two occasions after the Respondent had failed to visit her son. On each occasion, Vesta Annes was unable to see the Respondent. On several occasions she also called the Respondent at his law office, but was unable to speak with him. The Respondent failed to return her telephone calls.

After being hired and having received a fee of $1,500, Respondent never spoke with Vesta Annes despite her repeated attempts to contact him. At no time did he visit, speak with, correspond with, or otherwise contact Richard Annes. On July 27, 1978, Vesta Annes made a written request for a refund of her money. Respondent failed to comply.

Attorney Richard Brunt did interview Richard Annes and review the record of his conviction. Respondent paid Brunt $400.00 for his services. Respondent, himself, did nothing to assist Richard Annes and avoided contact after being employed.

From the foregoing findings we conclude that the Respondent failed to carry out a contract of employment and, thereby, neglected a legal matter entrusted to him in violation of Disciplinary Rules 7–101(A)(2) and 6–101(A)(3) of the *Code of Professional Responsibility for Attorneys at Law.*

 The evidence brought out under Count II of the complaint establishes that on August 31, 1972, the law firm of which Respondent was a member terminated their lease for office space they had occupied since 1966 and the firm was dissolved. The Respondent's partners paid their share of the rent due. However, Respondent did not pay his share which amounted to $467.80. On September 22, 1972, Respondent met the lessor, went to a bank and made out a counter check to him for $467.80. The check was drawn on the checking account of Mary K. Davis, Respondent's wife, and signed Mary K. Davis. Respondent gave the check to the lessor who deposited it. The check was dishonored due to insufficient funds in the account.

The lessor brought an action against Respondent and on March 25, 1977, a default judgment was entered against Respondent for $697.74 plus court costs. After proceedings supplemental were brought, Respondent appeared before the Judge of the Small Claims Court and agreed to pay $75.00 per month to satisfy his default judgment. The Respondent failed to make any payments pursuant to his agreement. He was again ordered to appear in the Small Claims Court on March 25, 1980. Respondent paid one hundred dollars and again promised to make monthly payments of $100.00 until the judgment was satisfied. He failed to honor this second agreement and has made no further payments in satisfaction of the judgment.

By issuing a check which he knew would not be honored, Respondent engaged in conduct involving fraud and misrepresentation in violation of Disciplinary Rule 1–102(A)(4) of the *Code of Professional Responsibility.* By twice advising the Court that he would voluntarily satisfy his Judgment when he had no intention of doing so, the Respondent further engaged in fraudulent conduct which is prejudicial to the administration of justice and thus violated Disciplinary Rule 1–102(A)(4) and (5).

 Relative to the charges under Count III of the Complaint we find that in September of 1976, Alonzo Harris employed the Respondent and paid him $1,000. Eastside Demolition and Excavating, Inc., (Eastside) had filed a complaint on account and on a dishonored check against Alonzo Harris and his construction company. Eastside had also filed a petition for appointment of a Receiver. The Court scheduled the petition for receivership for a hearing on October 1, 1976. Respondent entered his appearances, but told Harris that he would be out of town and that Harris need not attend the hearing. At the hearing Harris

appeared alone, Respondent failed to appear and a Receiver was appointed. Thereafter, Respondent engaged attorney Richard Brunt to file a writ of prohibition to set aside the Receivership. No fee agreement was mentioned but Harris was charged the cost and he paid Respondent $150.00 to file the petition.

On December 3, 1976, the Marion County Clerk released the funds held by the Receiver by tendering to the Respondent a check for $36,571 made payable to Respondent and Harris' company, Mammouth Development and Construction Consultants, Inc. Respondent presented the check for payment at a bank. The check had Alonzo Harris' name written on the back, but Harris had not written or authorized the endorsement. The bank manager refused to approve payment.

Respondent met with Harris at the bank and a loud argument ensued when Respondent demanded $4,000 from the released funds. Respondent later called his client at home stating that if he did not pay the $4,000, the Respondent would return the check and Harris would not receive any funds. Being concerned about losing all his funds, Harris endorsed the check and the Respondent received $4,000. Respondent paid $2,025 to Brunt for his work in obtaining the release of the funds.

Respondent continued to represent Harris in the lawsuit brought by Eastside through judgment and proceedings supplemental. Thereafter Harris employed Respondent and Brunt to appeal the adverse judgment. Mrs. Harris paid $300.00 which was split between the two attorneys.

Two motions to correct errors were filed on behalf of Harris and both were overruled. Respondent was sent notice of the ruling on July 5, 1977. No further action was taken on the appeal and Harris' right to appeal expired.

Respondent contends that he did not agree to handle the appeal but merely to file a motion to correct errors. However, the record in the trial court shows that Respondent continued his active representation of Harris until Respondent sent a letter to his client on September 23, 1977, offering to make the client's file available. Neither Respondent nor Brunt advised Harris that his motions to correct errors were denied, of the time limit for perfecting an appeal, or that he should hire another attorney. We find that Respondent was hired to perfect Harris' appeal and that he failed to do so.

From the foregoing findings, we conclude that Respondent's failure to appear in the Receivership hearing after being employed to prevent the Receivership and having already entered his appearance, resulted in the client incurring additional expense in bringing a petition before the Indiana Supreme Court. Such conduct violates Disciplinary Rules 6–101(A)(3) and 7–101(A)(3) of the *Code of Professional Responsibility for Attorneys of Law* in that he neglected a legal matter entrusted to him which resulted in damage to his client.

By attempting to cash the check for $36,571 without his client's knowledge or consent, the Respondent engaged in conduct involving dishonesty, fraud, deceit or misrepresentation in violation of Disciplinary Rule 1–102(A)(4). The Respondent only notified his client of the check when he was unsuccessful in attempting to cash it without his client's bona fide endorsement. His conduct in attempting to cash such check, before notifying his client of his possession of the check, is in violation of Disciplinary Rule 9–102(B)(1).

Respondent's failure to preserve his client's appellate remedy after filing the motion to correct errors is in violation of Disciplinary Rule 2–110(A)(2). By this conduct Respondent failed to carry out a contract of employment and neglected a legal matter entrusted to him in violation of Disciplinary Rules 7–101(A)(2) and 6–101(A)(3).

Our findings in this matter clearly establish a course of conduct which, in the interest of the preservation of the integrity of the legal profession, cannot be condoned. Respondent not only neglected his clients; he used them for personal gain at the sacrifice of any semblance of professionalism.

The standards set forth by the *Code of Professional Responsibility* do not mandate supererogatory performance. These rules have been drafted with an appreciation of the fact that most people are subject to human failings, such as neglect and procrastination. However, when these human failings reach the point of injury to individual or societal interests, the interdiction of these rules commences. And when it becomes evident that the harmful effects of the misconduct are really the product of a deliberate course of action, these rules require this Court to respond in a manner insuring the continued viability of the disciplinary system. Unfortunately, in the present case it appears to this Court that the Respondent willingly chose the latter course of action.

In view of the above considerations, this Court now finds that the strongest sanction available under the constitution of the State of Indiana should be imposed to preserve the integrity of the legal profession and to protect the public from future acts of misconduct as found in this case. It is therefore ordered that, by reason of the misconduct found in this cause, the Respondent be, and he hereby is, disbarred as an attorney in the State of Indiana.

Costs of these proceedings are assessed against the Respondent.